Noriega & Alvarez, Demandante y Apelante, *v.* The New York & Porto Rico Steamship Company, Demandada y Apelada.

Apelación procedente de la Corte de Distrito de Ponce en pleito sobre reclamación de bienes muebles.

No. 2841.—Resuelto en julio 26, 1923.

Reclamación y Entrega de Bienes Muebles — Compraventa — Derecho del Vendedor a Parar la Mercancía en Tránsito. — Para que un vendedor tenga derecho a parar mercancías en tránsito, deben concurrir las siguientes

circunstancias: (1) Debe haber un vendedor no pagado; (2) La propiedad de las mercancías debe haber pasado; (3) Las mercancías deben estar en tránsito del vendedor al comprador; (4) Una reventa de las mercancías por el comprador no debe haber extinguido el derecho; (5) El comprador debe estar insolvente.

ID.—ID.—ID.—CONOCIMIENTO DE EMBARQUE NO NEGOCIABLE.—La reventa bajo la base de un conocimiento de embarque directo qué lleva estampadas las palabras "no negociable," no impide al primitivo vendedor no pagado ejercitar su derecho de retener en tránsito la entrega de la mercancía en caso de insolvencia del primer comprador.

Los hechos están expresados en la opinión.

Abogados de la apelante: Sres. H. Tormes y R. Martínez Nadal.

Abogados de la apelada: Sres. O. B. Frazer y N. Gammman.

EL JUEZ PRESIDENTE SR. DEL TORO, emitió la opinión del tribunal.

Se trata de una acción en reclamación de bienes muebles establecida de acuerdo con el artículo 170 y siguientes del Código de Enjuiciamiento Civil. La demanda enmendada, base del pleito, copiada, en lo pertinente, dice:

"1. Que la demandante, Noriega & Alvarez, es dueña absoluta, desde Dibre. 18, 1920 y con derecho a la posesión inmediata desde entonces de los bienes siguientes:

"50 Bxs. Y. A. 2902 _____ 22673/4
"25  "  Gouda 1218 _____ 870
"11  "  Daisies Skim 526 _____ 437

"2º. Que dichos bienes tienen un valor de $1,030.00 y los mismos se encontraban depositados en la fecha en que este pleito comenzó, Dic. 21, 1920, en la Playa de Ponce, Puerto Rico;

"3º. Que la demandada, New York and P. R. S. S. Co., desde Dic. 21 de 1920, sin el consentimiento de la actora retuvo injustamente la posesión de dichos bienes y se negó a entregarlos a la demandante quien lo requería para ello amistosamente;

"4º. Que la demandante por procedimiento iniciado por la misma de acuerdo con los arts. 170 y siguientes del Código de Enjuiciamiento Civil de Puerto Rico, desde Dic. 21 de 1921 y dentro de este mismo pleito obtuvo la posesión de dichos bienes descritos por entrega que de ello le hizo el Márshal de esta Corte, quien los sacó de la posesión injustificada de la demandada. Y por todo lo

alegado, a esta Hon. Corte suplicamos que en su día y previo los trámites de Ley dicte una sentencia declarando con lugar esta demanda enmendada y en su consecuencia: (1) Que la demandante, desde Dic. 18, 1920, fué dueña absoluta y con derecho a la posesión de los bienes descritos; (2) Que condene a la demandada al pago de las costas en este pleito.''

La contestación, también copiada en lo pertinente, es como sigue:

''1. Niega que la demandante es dueña de los bienes descritos en el párrafo marcado 1o. de la demanda enmendada y niega asimismo que la demandante es dueña de algunos de dichos bienes o de parte alguna de ellos; y niega la demandada que la demandante ha sido en cualquier fecha desde Dicbre. 18, 1920, dueña de dichos bienes o de algunos de ellos o de cualquier parte de ellos; y niega la demandada que la demandante tiene o en cualquier fecha desde Dibre. 18, 1920, tenía derecho a la posesión inmediata de los bienes descritos en dicho párrafo o de algunos de ellos o de alguna parte de ellos, y alega que Reynolds & Company era en Dibre. 18, 1920 y en todo el tiempo desde esa fecha dueño de todos dichos bienes.

''2. Niega que los artículos mencionados en el párrafo 1 de dicha demanda enmendada tienen un valor de solamente $1,060, y alega por el contrario que dichos artículos tienen un valor de $1,130.95.

''3. Admite que la demandada se negó a entregar dichas mercancías a la demandante, y que la demandante la requirió y alega que la demandada tenía debida justificación para negar tal entrega, a saber, las instrucciones del dueño de dichas mercancías.

''4. En cuanto a las alegaciones del 4 párrafo de la demanda enmendada, la demandada alega que el márshal de esta Corte entregó las mercancías mencionadas a la demandante únicamente como custodiano en custodio *legis* y alega además que la demandante dispuso de dicha mercancía ilegalmente y en desacato a esta Hon. Corte. Por todo lo cual la demandada solicita que se declare sin lugar la demanda y que se condene a la demandante al pago de las costas, gastos, desembolsos y honorarios de abogado y que se ordene a dicha demandante pagar a la demandada además el valor de las mercancías a que se ha hecho referencia en esta contestación, o sea, la suma de $1,130.95.''

Fué el pleito a juicio y la corte lo resolvió en contra de la demandante. La sentencia se basa en los siguientes hechos declarados probados:

"1. Que la demandada New York & P. R. S. S. Company, se negó a hacer la entrega de dichos bienes que reclama a la demandante, fundándose en un cable recibido de Reynolds & Company en que le ordenaba paralizara la entrega de dichos bienes.—2.— Que dichos bienes fueron vendidos por Reynolds & Co. a Noriega & Sanquírico a un plazo de treinta días.—3.—Que el valor de dichos bienes es de $1,130.95.—4.—Que la demandante ha dispuesto de dichos bienes.—5.—Que en la fecha en que los vendedores Reynolds & Co. paró la entrega de dichos bienes era insolvente la firma de Noriega & Sanquírico.—6.—Que el conocimiento era un *Straight Bill of lading, not negotiable,* y no podía ser endosado a la demandante Noriega & Alvarez."

No conforme la demandante con la sentencia que declaró sin lugar su demanda y la condenó a pagar a la demandada la suma de $1,130.95 valor de la mercancía perteneciente a Reynolds & Co., apeló de ella para ante este Tribunal, señalando en su alegato seis errores cometidos a su juicio por la corte, 1, al limitar el interrogatorio directo de la demandante a la transacción objeto del pleito; 2, al admitir prueba secundaria para demostrar las instrucciones recibidas por la demandada; 3, al declarar probada la insolvencia de Noriega y Sanquírico; 4, al fijar el alcance del conocimiento de embarque; 5, al desestimar la demanda y condenar a la demandante a pagar la suma expresada en la sentencia, y 6, al imponer las costas a la demandante.

Se queja la demandante de que si bien a ella no se le permitió probar transacciones anteriores habidas entre Noriega y Sanquírico y Reynolds & Co., a la demandada se le permitió introducir prueba de otras negociaciones a los efectos de demostrar la insolvencia de Noriega y Sanquírico. Aparece del *record* que la demandante consintió la regla de la corte al introducir su prueba. No tomó excepción. Lo

ocurrido después no revivía lo resuelto y consentido. Además las circunstancias eran distintas. La insolvencia de Noriega y Sanquírico fué un hecho alegado en la contestación y la prueba de la falta de pago de efectos vendidos a dicha firma por Reynolds & Co. con anterioridad, era admisible.

Tampoco creemos que se cometiera el segundo de los errores señalados. Se insiste por la apelante en que debió presentarse no una copia sino el original del cable recibido por la demandada. Nos parece suficiente la contestación de la demandada contenida en su alegato. Dice así: "El hecho material en *issue* era y es la razón que tuvo la compañía para negarse a hacer la entrega, y como la intención de la New York y Porto Rico Steamship Co. se deriva de la copia del cable recibido por ella, ésta es evidencia primaria. En cuanto al envío del cable por el Sr. Reynolds aparece de la evidencia que el original de dicho cable se encuentra en la oficina de New York, y es bien sabido que cuando el original se encuentra fuera de la jurisdicción y fuera de la posesión de una de las partes no es necesario el presentarlo como prueba."

Estudiaremos conjuntamente las cuestiones suscitadas con motivo de los señalamientos de error números 3, 4 y 5.

No hay duda alguna con respecto al hecho de la venta por parte de Reynolds & Co., de los quesos de que se trata a Noriega y Sanquírico. Tampoco con respecto al embarque, a la orden del vendedor de que no fuera entregada la mercancía y al cumplimiento de dicha orden por parte de la demandada.

El punto fundamental de este pleito consiste en el derecho del vendedor a ordenar la retención de la mercancía vendida, en tránsito para ser entregada al comprador. Ambas partes citan copiosa jurisprudencia. Procuraremos referirnos a aquella que sea estrictamente necesaria.

El profesor Williston, que es una autoridad sobre la materia, en su obra sobre "Ventas," dice:

"Para que un vendedor tenga el derecho de parar mercancías en tránsito, estas circunstancias deben concurrir: (1) Debe haber un vendedor no pagado; (2) la propiedad de las mercancías debe haber pasado; (3) las mercancías deben estar en tránsito del vendedor al comprador; (4) el comprador debe estar insolvente; (5) una reventa de las mercancías por el comprador no debe haber extinguido el derecho." *Williston on Sales*, página 893.

Debe haber un vendedor no pagado. La prueba demuestra que los quesos vendidos no habían sido pagados. La venta se hizo a treinta días plazo. Es más, ni siquiera el giro había sido aceptado cuando la orden se dió por el vendedor y se cumplió por la demandada negando la entrega.

La propiedad de las mercancías debe haber pasado. Se trataba de un contrato perfecto. A virtud de él la propiedad de los artículos vendidos pasaba al comprador.

Las mercancías deben estar en tránsito del vendedor al comprador. Los quesos fueron embarcados por el vendedor consignados al comprador y en tránsito, en el vapor de la demandada, se encontraban cuando la orden de no entrega fué expedida.

El comprador debe estar insolvente. Requiere este requisito una consideración más amplia. La prueba demuestra que algunos días después de ocurridos los hechos origen de este pleito, Noriega y Sanquírico se presentaron en quiebra ante la Corte Federal. Dicha firma sostenía relaciones comerciales con Reynolds & Co., y dejó de pagar a su vencimiento varias remesas de mercancías por valor de unos seis mil dólares. Cuando Reynolds & Co. recibió esta información, ya había embarcado los quesos y acto seguido libró la orden de no entrega, de que se trata. La evidencia no demuestra pues, que a la fecha en que la orden fué

expedida, Reynolds & Co. estuvieran en posesión de prueba terminante de la insolvencia de Noriega y Sanquírico, pero los datos que tenían eran bastantes para actuar en la forma en que lo hicieron de acuerdo con la jurisprudencia.

Resumiendo esa jurisprudencia *Ruling Case Law,* dice:

"La insolvencia del comprador es esencial al derecho del vendedor de retención en tránsito. No puede ser ejercitado al mero capricho del vendedor cuando no existe insolvencia, y el hecho de que la mercancía haya sido embargada por acreedores del comprador, si el comprador no es insolvente, no da al vendedor el derecho de retención en detrimento de tales acreedores, y para establecer su derecho de retención el vendedor debe demostrar la insolvencia del comprador. *Este requisito de insolvencia no exige que el comprador esté absolutamente quebrado o haya sido formalmente declarado insolvente, sino que meramente significa una inabilidad general para pagar justas deudas en el curso ordinario del negocio. y el hecho de que la situación financiera del comprador esté tan seriamente embarazada que no puede cumplir con sus obligaciones se ha resuelto que es suficiente, especialmente cuando esta situación es seguida por su subsiguiente insolvencia.* Se ha resuelto que no se requiere una prueba estricta de insolvencia para justificar el ejercicio del derecho; que es suficiente que haya habido una falta de pago de la deuda a causa de la cual el derecho se reclama, y que el deudor no puede ser encontrado en su conocido lugar de negocio. El mero hecho de que el comprador pueda faltar al cumplimiento de su parte del contrato no da al vendedor el derecho de retención; y el derecho no surge en caso de muerte del comprador, a menos que su propiedad esté también insolvente." 24 R. C. L. 403 y 404. Las itálicas son nuestras.

Por último, una reventa de las mercancías por el comprador no debe haber extinguido el derecho. Como aquí existió una reventa a los demandantes aparentemente este requisito les favorece. Pero ¿pudo esa reventa verificarse válidamente? Ya dijimos que el conocimiento contiene estas palabras: "Straight Bill of lading, Not Negotiable" que aparecen no sólo impresas si que también marcadas en

letras grandes con un sello de goma en la parte más visible del documento.

"Cuando el conocimiento es un conocimiento directo o no negociable para el comprador, no puede haber duda de la aplicabilidad de la doctrina de retención *in transitu*. Este es el caso típico donde la doctrina debe ser permitida," dice el profesor Williston en su ya citada obra sobre "Ventas," párrafo 542, página 920, y luego, refiriéndose a las reventas y al conocimiento, expresa:

"Es fundamental que el vendedor no puede dar un derecho mayor que el que tiene. Cuando hay mercancías sujetas a un gravamen legal, como lo están cuando un vendedor no pagado está en posesión de ellas, el comprador puede adquirir solamente el derecho que el comprador original a quien él compró entonces tenía. Sin embargo, si el vendedor incondicionalmente transfiere al sub-comprador, siendo esto, en efecto, una entrega de las mercancías a él, el gravamen queda extinguido. Los derechos de los sub-compradores han sido considerados quizá más a menudo en casos envolviendo la doctrina de retención *in transitu,* y este derecho, es generalmente sostenido, puede únicamente ser desechado en la ley común por el traspaso al sub-comprador de un conocimiento de embarque endosado, porque únicamente en ese caso es que el sub-comprador, en efecto, recibe entrega de la mercancía. Bajo la Ley de Ventas por una parte, aún el traspaso de un conocimiento de embarque, si es un conocimiento no negociable, no afectará el derecho de retención *in transitu* del vendedor, y por otra parte, el mero hecho de que un conocimiento de embarque negociable está pendiente limita el derecho del vendedor. La importancia de un conocimiento de embarque endosado se debe a su operación como una entrega de las mercancías así como a un contrato para transferir título. Bajo la Ley de Ventas son únicamente los documentos de título negociables los que operan como una entrega cuando se endosan. De conformidad, el vendedor, si el derecho de retención *in transitu* es considerado como un derecho legal, tiene un mejor derecho que un sub-comprador, que adquiere algo menos que un traspaso de título acompañado por un documento que equivale en efecto a una entrega de las mercancías; y aún si el derecho de retención del vendedor se considera meramente como uno de equidad, esta equidad toma preferencia sobre cualquier derecho que el comprador pueda dar a un sub-comprador por cualesquiera otros

medios que un conocimiento de embarque negociable. Pero como un conocimiento de embarque negociable pendiente en poder del comprador puede subsiguientemente ser endosado, la retención no es permitida bajo la Ley de Ventas, cuando tal conocimiento ha sido expedido a menos que el vendedor pueda entregarlo al porteador." *Williston on Sales,* página 938 y 939.

No fué Noriega y Sanquírico el que reclamó los quesos de la demandada. Si él lo hubiera hecho personalmente, no hubiera habido cuestión. Con anterioridad a la llegada del vapor al muelle de Ponce se había ordenado la retención de la mercancía y nada hubiera podido reclamar Noriega & Sanquírico que en aquella fecha estaban en descubierto con Reynolds y Co. y en realidad de verdad en estado de insolvencia. Reclamó la demandante y ¿qué documento presentó para ello? Un conocimiento no negociable, un documento que hablando por sí mismo decía que los únicos que podían usarlo era Noriega & Sanquírico. El derecho de los demandantes estaba, pues, enteramente supeditado al del primitivo comprador. La reventa no varió las relaciones entre el vendedor y su comprador directo. El derecho que pudieran haber adquirido los demandantes cede enteramente al del vendedor.

Ambas partes en sus respectivos alegatos estudian la cuestión fundamental envuelta a la luz de la jurisprudencia americana y así lo hemos hecho nosotros. El párrafo final del artículo 706 de nuestro Código de Comercio dice: "El conocimiento podrá ser al portador, a la orden o a nombre de persona determinada." Y el 708 expresa: "Los conocimientos al portador destinados al consignatario serán transferibles por la entrega material del documento; y en virtud de endosos los extendidos a la orden. En ambos casos, aquel a quien se transfiera el conocimiento adquirirá sobre las mercaderías expresadas en él todos los derechos y acciones del cedente o endosante." *Expressio unius est exclusio alterius.* Pero aunque esto no fuera así, aceptando

que el conocimiento a nombre de determinada persona sea también negociable por ésta en términos generales, no habría duda alguna que dejaría de serlo si en el mismo conocimiento se consignara expresa y claramente que no lo era. Tal condición sería la ley del contrato.

Resta sólo considerar el último de los errores señalados. Realmente no hay prueba en los autos que demuestre que existió alguna combinación fraudulenta entre los demandantes y Noriega y Sanquírico. Los demandantes se presentaron y quedan legalmente después del pleito como compradores de buena fe. Pero de acuerdo con la ley se ha visto que no tenían derecho a posesionarse de la mercancía y habiendo el juez sentenciador apreciado que debía imponerles las costas y no habiéndose demostrado un claro abuso de discreción, no creemos estar justificados en revocar su decisión.

Como los demandantes faltando a las obligaciones contraídas como depositarios, bien abiertamente, ya por ignorancia de las mismas, vendieron los efectos en cuestión, en vez de ellos deben retornar a la demandada su importe como ordena la sentencia recurrida, que debe confirmarse en todos sus particulares.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres Asociados Wolf, Aldrey, Hutchison y Franco Soto.